J-S50040-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IGOR BYKOV, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| OLGA LOMOVA, | : | |
| | : | |
| Appellant | : | No. 3556 EDA 2019 |

Appeal from the Order Entered November 21, 2019
in the Court of Common Pleas of Philadelphia County
Domestic Relations Division at No(s): D13058466

BEFORE:     BENDER, P.J.E., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 15, 2021**

Olga Lomova (Wife) appeals from the order entered November 21, 2019, which found two provisions of a marital settlement agreement invalid, insomuch as the provisions constituted an unlawful restraint on the parties' statutory right to partition property. The order further restored the right of Igor Bykov (Husband) to partition to sell two properties jointly owned by the parties. Upon review, we affirm.

Wife and Husband were married on May 21, 2010. They are parents of two minor children born in 2009. Following the parties' separation on February 19, 2013, Husband filed a complaint for divorce. On November 6, 2013, the parties entered into a marital settlement agreement (MSA) addressing various financial consequences of their marital dissolution. The MSA was drafted by Wife's counsel; Husband elected to forgo counsel. The parties' divorce decree,

_____

*Retired Senior Judge assigned to the Superior Court.

which was entered on December 31, 2013, incorporated the MSA but did not

merge with it.

The MSA addressed various pieces of property owned by the parties.

The sections covering the two properties relevant to this appeal are as follows:

> The parties are owners as tenants by the entireties of certain residential property located [in Philadelphia, Pennsylvania] (herein referred to as "Almatt Place"). The parties agree that the current fair market value of Almatt Place is approximately [$250,000]. There is currently a mortgage on Almatt Place with an approximate balance of [$395,800] and a [home equity loan] in the approximate amount of [$115,000]. The parties agree that Husband has been and shall continue to be solely responsible for all expenses, bills, utilities, repairs, capital improvements, taxes, loans, mortgages, and any and all other expenses and charges associated with Almatt Place and Husband shall exonerate and indemnify Wife against and hold Wife harmless from any liability or expense, including counsel fees and costs, incurred as a result of any such liability.
>
> Wife shall be entitled to continue residing at Almatt Place with exclusive possession **unless and until such time as she chooses to sell Almatt Place**. … Should Wife decide to sell Almatt Place, Husband shall cooperate in signing any and all necessary documents including a listing and [s]ales [a]greement approved by Wife. Except as otherwise provided, … all net proceeds[,] after usual expenses and deductions other than those assumed herein by Husband, from the sale of Almatt Place shall be distributed to the parties equally, however, Husband shall be solely responsible for any deficiency due for any and all loans, mortgages, fees, costs, utilities, taxes, repairs, etc. … **Should Wife relocate or choose to sell Almatt Place**, Husband shall also be responsible for the payment of Wife's mortgage or rent and utilities for the new residence until the children have completed their post[-]graduate educations.

MSA, 11/6/2013, at ¶ (1)(A)(i) (paragraph break inserted; emphasis added).

> The parties are owners of certain commercial real property located at 2177 Bennett Road, Philadelphia, PA 19116 (hereinafter

referred to as "2177 Bennett Road"), as EX Max LLC. The parties agree that the current fair market value of 2177 Bennett Road is approximately [$600,000]. There is currently a mortgage on 2177 Bennett Road with an approximate balance of [$500,000]. The parties agree that Husband has been and shall continue to be solely responsible for all expenses, costs, loans, mortgages, debts, liens, repairs, improvements, taxes, insurance and all other expenses and charges associated with 2177 Bennett Road and shall exonerate and indemnify Wife against and hold Wife harmless from any liability or expense, including counsel fees and costs, incurred as a result of any such liability. Wife shall have the use of three offices in the front of the building for her use. Wife has the option to expand her use of the property to [50%] of the useable space. Husband shall be solely responsible to collect all rents associated with the property and provide Wife with a monthly Profit/Loss Statement with supporting documentation. The parties shall share all rental proceeds equally and Husband shall be solely responsible for any deficits. **When the parties agree to sell 2177 Bennett Road**, all net proceeds, after usual expenses and deduction other than those assumed herein by Husband, from the sale of 2177 Bennett Road shall be distributed to the parties equally, however, Husband shall be solely responsible for any deficits arising therefrom.

*Id.* at ¶ (1)(B)(ii)(a) (emphasis added).

On June 7, 2016, Husband filed a petition to modify the MSA,[1] contending that the "totality of the [MSA] negatively puts [him] in a financial struggle that is not feasible for any individual." Petition to Modify the MSA, 6/7/2016, at ¶ 29. Husband averred that paying the mortgages, expenses, and bills for Almatt Place and 2177 Bennett Road constituted an "undue

---

[1] Husband entitled his filing as a motion. Since nothing was pending before the court, his request more properly operated as a petition, which is how the trial court treated it and how this memorandum shall refer to it. The trial court maintained continuing jurisdiction over the parties' MSA pursuant to 23 Pa.C.S. § 3104(a)(1) (providing jurisdiction in divorce proceedings for determining and disposing of property rights and interests).

- 3 -

hardship" for him that could force foreclosure on both properties. *Id.* at ¶¶ 7-10, 16-18. Husband emphasized that on top of paying the mortgages, he also had to maintain a life insurance policy for Wife, pay Wife $1,000 per month to satisfy the $264,000 the parties agreed was Wife's equitable share of the marital estate, and pay Wife $2,000 per month for child support. *Id.* at ¶¶ 21-28. The petition did not specify precisely how Husband desired the MSA to be modified.[2]

Wife filed a response and memorandum of law in opposition to Husband's petition, emphasizing that Husband had agreed to the provisions with which he now took issue. She highlighted provisions in the MSA wherein the parties agreed that neither party could seek to modify the MSA and that section 3105 of the Divorce Code prohibited such modifications. *See generally* Response in Opposition and Memorandum of Law, 8/18/2016.

The certified record forwarded to this Court omits filings and orders between mid-2016 and late-2017, but the docket indicates that the parties appeared before an administrative judge who then referred the issue back to the trial court. Prior to a hearing before the trial court, Husband filed a memorandum of law wherein he expanded upon the legal arguments he had

---

[2] Both the trial court and Wife interpreted Husband's petition as seeking permission to sell Almatt Place and 2177 Bennett Road. *See* Trial Court Opinion (TCO), 12/30/2019, at 2 (page numbers supplied); Wife's Brief at 5. However, the petition included in the certified record did not make an explicit request.

presented in his petition. Specifically, Husband argued that the MSA was unconscionable because it did not permit the parties to move on from each other post-divorce, and because it was "one-sided to the point of absurdity." Memorandum of Law, 11/26/2017, at 4-5 (unnumbered). Husband requested that the court reform the MSA to comport with his financial reality or permit him to "buyout" Wife in an amount determined by the court. *Id.* at 6, 10.

The trial court conducted a hearing on Husband's petition[3] on December 4, 2017. Both Husband and Wife testified. The trial court took the matter under advisement. On March 15, 2018, the trial court issued an order and opinion with findings of fact. The order granted Husband leave to amend his petition to include a specific claim pursuant to section 3507 of the Divorce Code, which governs division of property owned as tenants by the entireties following divorce.

On April 18, 2018, Husband filed an amended petition with a claim pursuant to section 3507. Wife filed a response opposing the merits of Husband's section 3507 claim, and both parties filed memoranda of law. A hearing originally set for September 2018 was continued at the joint request of the parties for more time to attempt to reach a resolution without court intervention. After inquiry from the court following a long period of inactivity,

---

[3] While Husband's petition was pending, Wife filed a petition for contempt and to compel enforcement of the MSA. The December 4, 2017 hearing also addressed Wife's petition; however, Wife's petition related to different disputes governed by the MSA and is not relevant to this appeal.

the parties advised the court they had not reached a resolution. The trial court conducted a second hearing on November 20, 2019. In relation to this matter,[4] there was no further testimony and only argument by counsel.

On November 21, 2019, the trial court granted Father's amended petition in part. Specifically, the trial court determined that the MSA unlawfully restrained Husband's statutory right pursuant to section 3507 to partition properties held as tenants in common with Wife. Order, 11/21/2019, at 1, 4. Accordingly, the trial court modified the MSA to authorize Husband to petition for partition of Almatt Place and 2177 Bennett Road without Wife's agreement or consent. *Id.*

Wife timely filed a notice of appeal. The trial court did not order Wife to file a concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). In anticipation of an appeal and prior to the trial judge's retirement, the trial court issued an opinion pursuant to Rule 1925(a). *See generally* Trial Court Opinion, 12/30/2019. In its opinion, the trial court directed our attention to its November 21, 2019 order.

On appeal, Wife presents one issue: "Whether the trial court erred in modifying the [MSA] in violation of 23 [Pa.C.S.] § 3105(c) finding it

---

[4] The trial court heard testimony in the parties' child support matter. The child support matter is filed under a different docket number and is not at issue in this appeal.

constituted an unlawful restraint upon [Husband's] rights to partition the properties pursuant to 23 [Pa.C.S.] § 3507." Wife's Brief at 4.

Specifically, Wife argues that Husband freely and voluntarily agreed to the terms limiting his right of sale in exchange for other things, such as Wife's forgoing alimony. *Id.* at 23-24. Wife points to caselaw indicating that in the absence of fraud, misrepresentation, or duress, the trial court should not interfere with the parties' contractual arrangements. *Id.* at 9-14. Wife emphasizes that subsection 3105(c) of the Divorce Code prohibits court modification, plus the parties agreed in paragraph 20 of the MSA that a court could not modify its terms. Wife's Brief at 10 (quoting MSA, 11/6/2013, at ¶ 20 ("Pursuant to [s]ection 3105 of the Pennsylvania Divorce Code, the provisions of this [MSA] shall not be modifiable by any court or either party individually, except that any provision regarding child support and custody may be modified by the appropriate court.")).

Wife argues the trial court ignored subsection 3105(c) of the Divorce Code, which generally prohibits court modification of marital settlement agreements, in favor of subsection 3507(a), which permits the parties to partition for the division of property post-divorce. *Id.* at 16-24. In Wife's view, the court ignored law establishing the MSA as a valid, binding contract. *Id.* Finally, Wife contends that the agreed-upon limitation on Husband's right to partition is reasonable because the delay on partition ends when she decides to sell, Husband bargained freely for this agreement, Wife gave up

her right to alimony in the agreement, and Husband implicitly waived his statutory right to partition by entering into the MSA. *Id.*

To resolve Wife's arguments, we bear the following in mind. First, marital settlement agreements that did not merge into a divorce decree are governed by the law of contracts. *Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007).

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision.

*Id*. (citations omitted).

The standard of enforceability of a marital settlement agreement is well settled: "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *Crispo v. Crispo*, 909 A.2d 308, 313 (Pa. Super. 2006) (quoting *McMahon v. McMahon*, 612 A.2d 1360, 1363 (Pa. Super. 1992)) (citations omitted). "We are not permitted to review the reasonableness of a marital settlement agreement to determine its validity." *Paroly v. Paroly*, 876 A.2d 1061, 1065 (Pa. Super. 2005). Generally, a trial court has "neither the power nor the authority to modify or vary the decree unless there is conclusive proof of fraud or mistake." *Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super. 2004).

The Divorce Code specifically contemplates that parties may opt to resolve their jointly-owned property by a marital settlement agreement

without interference by a court. "In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties … shall not be subject to modification by the court." 23 Pa.C.S. § 3105(c). However, the Divorce Code also recognizes that upon divorce, former spouses have the right to free themselves of jointly-owned property that binds them together:

> Whenever married persons holding property as tenants by entireties are divorced, they shall, except as otherwise provided by an order made under this chapter, thereafter hold the property as tenants in common of equal one-half shares in value, and either of them may bring an action against the other to have the property sold and the proceeds divided between them.

23 Pa.C.S. § 3507(a).

As our Supreme Court has explained,

> [p]roperty held by husband and wife as tenants by the entireties is not subject to partition while so held. Upon divorce of spouses who formerly held property as tenants by the entireties, however, their continued joint ownership of the property becomes, by operation of the statute,[5] that of a tenancy in common, and either spouse may thereafter compel partition. Among tenants in common partition of real property is normally a matter of right. Nevertheless, the statutory right to partition may be modified or postponed for a reasonable time by agreement of the parties.

*Shoup v. Shoup*, 364 A.2d 1319, 1321-24 (Pa. 1976) (citations and footnotes omitted). In this Commonwealth,

> [a] restraint on the free alienation of property is not favored in the law. *Lauderbaugh v. Williams*, 186 A.2d 39, 41 (Pa. 1962). While a "limited and reasonable restraint" may be valid, "an

---

[5] The Supreme Court was referring to 68 P.S. § 501, the substantially similar predecessor to subsection 3507(a).

absolute restraint is against public policy and, therefore, of no legal effect." ***Id.*** Whether a restraint is reasonable presents a question of law that we consider in light of the specific facts and circumstances of the case, "including any time limit on the restraint." ***Ralston v. Ralston***, 55 A.3d 736, 740 (Pa. Super. 2012); ***see also, e.g., Hyatt v. Hyatt***, 417 A.2d 726, 729 (Pa. Super. 1979) (holding that agreement to suspend partition action indefinitely constituted an unlawful restraint on alienation); ***Lauderbaugh***, 186 A.2d at 41 (noting that right of alienation preconditioned upon admittance to local association was "not limited in time and purports to be a perpetual one, a fact which militates strongly against its enforcement").

***Wells Fargo Bank N.A. v. Zumar***, 205 A.3d 1241, 1246 (Pa. Super. 2019) (parallel citations omitted).

In ***Hyatt***, following a divorce, the wife sought to partition property she had jointly owned with her husband during their marriage. The husband defended against partition by pointing to the parties' agreement relating to the property. In the agreement, the wife had agreed not to seek partition and permitted the husband to reside at the property in exchange for dividing proceeds in half upon sale in the future. After examining the favored right to partition following a divorce provided by case law and the predecessor to subsection 3507(a), this Court ruled that the restraint on partition set forth in the agreement was unreasonable and unlawful. ***Hyatt***, 417 A.2d at 727-29. This Court reasoned that the parties' agreement postponed the wife's right to sell the property indefinitely and without consideration, noting that the agreement had no discernable time limit and did not provide the wife with anything more than that which she was already entitled. Significantly, while

the parties fully anticipated an indefinite postponement of the right to partition the property, it did "not change the fact that [the agreement] constitute[d] an unlawful restraint upon the free alienation of the property." *Id.* at 40.

Six years later, this Court confronted a similar issue in *Kopp v. Kopp*, 488 A.2d 636 (Pa. Super. 1985). In that case, the husband sought partition of jointly-owned property post-divorce and the wife contested the division by pointing to the parties' marital settlement agreement. In the agreement, the husband agreed to allow the wife and their kids to live in the family home in exchange for the wife's forgoing of support and alimony. Wife agreed to pay all bills, mortgages, and taxes; if she did not, the husband could seek to sell the property. If wife decided not to reside at the home any longer, the parties agreed they would sell the property and split the proceeds equally. The trial court initially ruled in favor of the husband's request for partition. *Id.* at 232-33.

On appeal, this Court overturned that decision. This Court said that while the timeframe to sell was not definite because it was conditioned upon wife's decision to sell or her death, under the circumstances of the case it was reasonable. *Id.* at 235. The circumstances emphasized by the Court included that (1) at most, the postponement of husband's right to sell would last for the wife's lifetime; (2) the parties bargained for that postponement in exchange for the wife's giving up of her right to seek support and alimony; (3) the husband was represented by counsel, the parties bargained freely, and

there was no "overreaching or undue influence"; (4) the husband expressly waived his statutory right to partition in the agreement; and, most significantly, (5) the husband had the ability to sell the property if the wife did not pay the bills. *Id.* at 235-36. The Court compared this to *Hyatt*, where, "[w]hether or not [the husband] continued to occupy the premises, there were no conditions placed upon the husband, the occurrence of which would have triggered the wife's right to compel partition." *Id.* at 235.

In the instant case, the trial court found the parties' situation more akin to *Hyatt* than *Kopp*. Specifically, the trial court emphasized its view that consideration was lacking in the agreement, the extreme one-sided nature of the terms in favor of Wife, and Husband's lack of counsel when signing the agreement drafted by Wife's counsel. Order, 11/21/2019, at 1-4. The trial court also determined that the restraint on Husband's right to sell was indefinite and wholly conditioned upon Wife's whim without any corresponding detriment to her. *Id.* The trial court noted that in *Kopp*, unlike here, the husband expressly waived his statutory right to partition. *Id.*

We agree with the trial court that this case is more similar to *Hyatt* than it is to *Kopp*. While Wife argues there was consideration for the agreement because the parties agreed that Husband would not pay her alimony, as a whole, the agreement drafted by Wife's counsel is slanted heavily towards Wife, particularly the provisions relating to the properties. For example, Wife has exclusive possession of the Almatt Place residence without paying for a

single expense, bill, utility, repair, capital improvement, tax, loan, mortgage, or any other expense or charge associated with the property. Wife can live there as long as she wants. Wife is the sole decider on whether Almatt Place can be sold. *See* MSA, 11/6/2013, at ¶ (1)(A)(i) ("Wife shall be entitled to continue residing at Almatt Place with exclusive possession **unless and until such time as she choose to sell Almatt Place.**") (emphasis added). If Wife "relocate[s] **or** choose[s] to sell Almatt Place," Husband must pay Wife's mortgage or rent and utilities for her new residence until the parties' children complete their graduate school education, without any limits on how long the then middle-school aged children have to begin or complete graduate school in the future. *Id.* (emphasis added). In fact, the use of the disjunctive "or," combined with the phrase "unless and until," suggests that Wife could move out of Almatt Place, invoke the clause requiring Husband to pay for her new residence, and decline to sell Almatt Place, thereby forcing Husband to pay for the costs of two residences and prohibiting him from selling Almatt Place until she decides she wants it to be sold. Thus, not only is the postponement on Husband's right to sell indefinite, it also is unreasonable.

Furthermore, while Wife urges us to find that Husband implicitly waived his statutory right to partition by entering into the MSA and freely agreeing to its terms, simply because the parties agreed to defer partition does not render the deferment reasonable and lawful. *See Hyatt*, 417 A.2d at 727–40. Wife is correct that generally the trial court cannot modify the parties' post-

separation agreements and entering into a bad deal is not cause to void the agreement later.  **See e.g.**, **Paroly**, 876 A.2d at 1065; 23 Pa.C.S. § 3105(c).  But here, the trial court did not simply modify the agreement; instead, it found two terms of the agreement to be unlawful and in violation of Husband's absolute statutory right to partition.   Based upon **Hyatt** and subsection 3507(a), the trial court did not err in doing so.  Accordingly, we affirm the trial court's order finding the MSA invalid, insomuch as it constitutes an unlawful restraint on Husband's statutory right to partition, and permitting Husband to petition to sell the Almatt Street and 2177 Bennett Street properties.

Order affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>6/15/2021</u>