Bernard R. RALSTON and Marissa Ralston, his wife, Appellants

v.

Elverta RALSTON, Deceased, Walter Francis Ralston, Jr., Deceased and Patricia Ralston, Harold Ralston, Reuben Ralston; Janice Boyke; Florence K. Lender, Roy R. Ralston, Samuel Ralston, Sr., and their Heirs, Successors, Executors, Administrators, and assigns, as well as any other Person, Party or Entity, Appellees.

Superior Court of Pennsylvania.

Argued June 27, 2012.
Filed Oct. 24, 2012.

David C. Mason, Philipsburg, for appellants.

Eric E. Cummings, Clearfield, for appellees.

BEFORE: OLSON, J., WECHT, J., and PLATT, J.*

OPINION BY WECHT, J.:

Bernard and Marissa Ralston ["Appellants"] appeal from an October 21, 2011 order that granted the Appellees' motion for summary judgment and denied Appellants' motion for summary judgment. After careful review, we affirm in part and reverse in part.

The trial court summarized the factual history as follows:

Walter Francis Ralston, Sr., and Elverta Ralston, his wife, ["Grantors"] owned a parcel of land in Decatur Township, Clearfield County. By a deed dated June 30, 1984, they conveyed the surface estate to their son, Walter Francis Jr. ["Walter"]. The deed contains this relevant language:

EXCEPTING AND RESERVING unto the Grantors, parties of the First Part, the following:

1. All timber, coal, gas, oil, and all other minerals in and upon the said property together with the right of ingress, egress, and regress, in cutting, digging for, drilling for, or any other appropriate method of removal for said timber, coal, gas, oil or any other minerals, and the carrying away of the same.

2. The right of ingress, egress, and regress to any and all portions of the said property at any time for any and all purposes during their natural lifetime.

3. This property shall not be sold, granted, or conveyed, in whole or in part, to another during the natural lifetime of the GRANTORS.

4. The above exceptions and reservations (item numbers 1, 2, and 3) become null and void upon the death of both of the GRANTORS, at which time the rights set forth in item no. 1 above, become vested in the GRANTEE.

Grantor Walter Francis Ralston Sr. died in 1986. In 1991, the Grantee Walter Francis Ralston Jr. conveyed the land to himself and his wife, Patricia L. Ralston ["Patricia"], one of the [Appellees], as a Tenancy by the Entireties. Walter Francis Ralston, Jr. then died in 1993. By well[-]established property law, this vested whatever rights Walter Jr. and Patricia had in the land in the surviving member of the marriage, Patricia. The last original Grantor, Elverta Ralston, then died in 1996. In 1999, Patricia Ralston conveyed her rights in the land to her son, [Appellant] Bernard R. Ralston.

Trial Court Opinion ["T.C.O."], 10/21/11, at 2–3.

Appellants initiated the instant litigation on February 25, 2011 by filing an action to quiet title. T.C.O. at 3. Appellants sought to be declared sole owners of the land,

* Retired Senior Judge assigned to the Superior Court.

including all appurtenant timber, coal, gas, oil and other mineral rights ["excepted rights"]. *Id.* Appellees, among whom are heirs of the Grantors, counterclaimed and sought a 5/7 ownership interest in those excepted rights. *Id.* Both sides filed motions for summary judgment. Following argument, the trial court issued an opinion and order, granting Appellees' motion and denying Appellants' motion. This appeal followed.[1]

Appellants present two issues for our review:

1. Did the trial court err in concluding that the language in the 1984 deed created an exception rather than a reservation and which continued *[sic]* in the heirs of the grandparents despite the "null and void" clause in the deed?

2. Did the 1991 deed by the son placing the title to the land in tenancy by the entireties with his wife violate a reasonable restraint on alienation?

Appellants' Brief at 3.

Our scope and standard of review of a grant of summary judgment are well-settled:·

[O]ur scope of review is plenary, and our standard of review is the same as that applied by the trial court. . . . An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of mate-

rial fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo.*

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Brandon v. Ryder Truck Rental, Inc.,* 34 A.3d 104, 107–08 (Pa.Super.2011) (quoting *Rabatin v. Allied Glove Corp.,* 24 A.3d 388, 390–91 (Pa.Super.2011)).

■ We first address Appellants' second issue, which concerns the restraint on alienation. Appellants challenge the language in the deed that prevents transfer during the Grantors' lifetimes. Appellants argue that the restraint on alienation in the deed was unreasonable and should be void as against public policy. Appellants contend that the restraint was absolute because it prevented any transfer of any interest during the Grantors' lifetimes. Appellants' Brief at 10–12.

Appellees respond that limited and reasonable restraints, especially when limited in time, are enforceable. Appellees argue that the restraints in the deeds were reasonable because they were limited to the lifetimes of the Grantors. Appellees' Brief at 9–11.

The trial court found that the deed was not bound by an absolute restraint. T.C.O. at 8. The trial court found that the time during which Walter was restrained

---

1. The trial court ordered a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants timely complied. After receiving the concise statement, the trial court chose not to file a supplement to its October 21, 2011 opinion.

from conveying the property was limited and reasonable, and that the restraint was therefore valid. T.C.O. at 9.

Restraints on alienation are not automatically void, but are generally disfavored in Pennsylvania law. *Lauderbaugh v. Williams*, 409 Pa. 351, 186 A.2d 39, 41 (1962). Absolute restraints are against public policy and are void. *Id.* A restraint on alienation that is reasonable and limited is acceptable. *Id.* Whether a restraint is reasonable is a question of law that turns upon the facts and circumstances of the specific case, including any time limit on the restraint. *Rice v. Rice*, 468 Pa. 1, 359 A.2d 782, 784 (1976).

Often, the determination of whether a restraint on alienation is reasonable depends upon whether the restraint is limited in time. For example, an agreement to suspend a partition action indefinitely was an unreasonable restraint, and was accordingly invalid. *Hyatt v. Hyatt*, 273 Pa.Super. 435, 417 A.2d 726, 729 (1979). Similarly, a perpetual restraint which required that the purchaser of any land along the Lake Watawga shore must be a member of the Lake Watawga Association was an unreasonable restraint. *Lauderbaugh*, 186 A.2d at 40. However, a right of first refusal without a stated duration was deemed reasonable because the right was actually time-limited by the rule against perpetuities to the lifetime of the grantor plus twenty-one years. *Estate of Royer v. Wineland Equip., Inc.*, 444 Pa.Super. 276, 663 A.2d 780, 782 (1995).

Appellants cite *Mowers v. Mowers*, 22 Pa. D & C.4th 499 (C.P. Cumberland 1994),[2] to support their position that the instant restraint is unreasonable. In that case, the parents conveyed a subdivided lot to their son and a second lot to their daughter, while keeping a third lot for themselves. *Id.* at 500. The deeds included a restraint on alienation during the parents' lifetimes. *Id.* The son paid the parents for his lot and built a house on that lot. *Id.* at 501. After the son married, the parents denied his request to allow him to transfer the deed into his and his wife's names. *Id.* Later, the parents said they would allow the transfer only if the son paid $20,000 (which was more than the land was worth), in order to have a road added. *Id.* at 502. This road was required by the local authority before the parents were allowed to create a fourth lot to be given to another daughter. *Id.* The son declined. *Id.* The son's wife had contributed to the mortgage and had helped pay for improvements to the house. *Id.* at 503. The trial court found the restraint to be unreasonable under the facts of the case, in part because the son was prevented from moving and because the parents conveyed the land in fee simple and retained no ownership interest in the land. *Id.* at 510.

The instant case more closely resembles the circumstances we confronted in *Estate of Royer*. The restraint we examine here was limited in duration. The deed only imposed that restraint during the Grantors' lifetimes, likely a shorter time period than in *Estate of Royer*, in which the restraint effectively lasted until the grantor's death plus twenty-one years. While the language of the instant restraint is similar to that in *Mowers*, the facts are distinguishable. Here, there is nothing in the record to indicate that Appellants are living on the subject land and are unable to move. There is nothing in the record to show that Appellants paid market value

---

2. Decisions of the Courts of Common Pleas are not binding precedent for the appellate courts, but may be considered for their persuasive value. *Hirsch v. EPL Technologies, Inc.*, 910 A.2d 84, 89 (Pa.Super.2006).

for the land that they received.[3] There is no indication that Walter asked the Grantors to allow him to transfer the title into his and Patricia's name, or that permission to do so would have been withheld. Additionally, unlike *Mowers,* the Grantors here did retain an ownership interest, specifically to the excepted rights. Because of the factual distinctions between the instant case and *Mowers,* and because the restraint here was limited only to the Grantors' lifetimes, we view that restraint as limited and reasonable. We find no error in the trial court's conclusion that the restraint was valid and that Walter's conveyance to Patricia and himself during the Grantors' lifetimes was in violation of the restraint.[4]

■ We now return to consider the first of the two issues that Appellants present for our review. In that issue, Appellants challenge the trial court's conclusion that the deed created an exception rather than a reservation. Appellants argue that the null and void language in the fourth paragraph precluded a finding that the deed contains an exception rather than a reservation. Appellants contend that the deed shows the intent of the Grantors to limit their rights to the land, as outlined in paragraphs 1–3, solely to the duration of their lifetimes. Appellants' Brief at 7–10.

Appellees reply that the language created an exception because the Grantors retained the title to excepted rights, and those rights did not pass to Walter. Appellees also assert that the deed could not have created a reservation because the

things excepted (rights to timber, coal, gas, oil, and minerals) were in existence at the time of the deed. Appellees argue that, because those rights were not vested in Walter when he conveyed the land to Patricia and himself, they remained with the Grantors to pass to their heirs. Appellees' Brief at 4–8.

The trial court determined that the Grantors retained the excepted rights. T.C.O. at 5. The court found that the deed created an exception because the title to the excepted rights remained with the Grantors and because it was in being when the deed was made. T.C.O. at 5–6. The court found the language could not constitute a reservation because a reservation creates a new right in something that did not exist at the time of the grant but arises out of the grant. *Id.* The trial court determined that the timber and other things excepted were in being at the time of the grant. T.C.O. at 6. The trial court determined that, since the deed created an exception, the rights remained with the Grantors.

■ The terms "exception" and "reservation" have been used interchangeably in deeds. *Walker v. Forcey,* 396 Pa. 80, 151 A.2d 601, 606 (1959). A reservation pertains to incorporeal things that do not exist at the time the conveyance is made. *Id. See Lauderbach–Zerby Co. v. Lewis,* 283 Pa. 250, 129 A. 83, 84 (1925) (reservation is creation of a right or interest that did not exist prior to grant). However, even if the term "reservation" is used, if

---

**3.** The deed of transfer between Patricia and Appellants indicates that $1 was paid in consideration.

**4.** Appellants also assert an alternative argument to the effect that the deed created a fee simple subject to a condition subsequent. Appellant's Brief at 13–14. This argument is waived, as Appellants failed to include it in the Rule 1925(b) concise statement. We note

that, because our law favors free transfer of real property, where a deed does not include an expression of reversion, a restraint should be deemed a covenant rather than a fee simple determinable or a fee subject to a condition subsequent. *Petition of Conference of Congregational & Christian Churches of Pa.,* 352 Pa. 470, 43 A.2d 1, 3 (1945).

the thing or right reserved is in existence, then the language in fact constitutes an exception. *Walker,* 151 A.2d at 606; *Silvis v. Peoples Natural Gas Co.,* 386 Pa. 453, 126 A.2d 706, 708 (1956) (where no new rights are created, language treated as exception). If there is a reservation, it ceases at the death of the grantor, because the thing reserved was not in existence at the time of granting and the thing reserved vests in the grantee. *Id.* An exception, on the other hand, retains in the grantor the title of the thing excepted. *Id.* Because the exception does not pass with the grant, it demises through the grantor's estate absent other provisions. *Id.* at 709.

Instantly, paragraph 1 speaks to coal, oil, timber, gas and minerals. These are things that are corporeal, and in existence prior to the deed. Paragraph 1 did not create a new right. Therefore, paragraph 1 created an exception. Because it was an exception, the rights did not pass to Walter, but remained with the Grantors to dispose of through their estate. The null and void language does not change the nature of the excepted rights created in paragraph 1. The trial court did not err in concluding that the language of paragraph 1 created an exception, rather than a reservation.

■ While the language of the deed created an exception, our inquiry does not end there. Quite apart from the fact that the deed created an exception, we must examine whether the deed required a forfeiture notwithstanding the "null and void" language that Appellants invoke.[5] The trial court concluded that Walter's conveyance somehow worked a forfeiture of the

rights that otherwise would have vested in him when the Grantors died. T.C.O. at 7. The trial court cites no authority for this forfeiture consequence. Nor do Appellees.

We must look to the deed.

■ When interpreting a deed:

[A] court's primary object must be to ascertain and effectuate what the parties themselves intended. The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it. To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Consolidation Coal Co. v. White,* 875 A.2d 318, 326–27 (Pa.Super.2005) (internal citations omitted). "[W]ords of a contract are to be given their ordinary meaning." *Kripp v. Kripp,* 578 Pa. 82, 90, 849 A.2d 1159, 1163 (2004).

---

5. As part of their argument on restraint concerning alienation, Appellants presented an alternative argument that Walter's transfer of the property to a tenancy by the entireties with Patricia was a voidable transaction and should not result in a forfeiture, because the Grantors had the opportunity to initiate an action to strike or set aside the transfer but chose not to do so. Appellants' Brief at 13–14. We address forfeiture in conjunction with our analysis of Appellants' invocation of the "null and void" clause of the deed's Paragraph 4.

*Butler v. Charles Powers Estate*, 29 A.3d 35, 40 (Pa.Super.Ct.2011), *allocatur granted*, —— Pa. ——, 41 A.3d 854 (2012).

Here, the deed created an exception in regard to the excepted rights. Yet, the "null and void" language in paragraph 4 indicated that the Grantors wished to end the exception at their deaths and wished that the excepted rights pass to Walter and not through their estate. This is the only way to interpret the deed so as to give effect to all of its language. Otherwise, the exception would utterly trump the "null and void" language, and the excepted rights would pass only through the Grantors' estate. That interpretation would nullify paragraph 4.

■■■ The trial court here, citing no authority, chose to interpret paragraph 3 as working an implied forfeiture of Walter's rights. While it might seem reasonable to speculate that the Grantors may have wished the restraint on alienation to have teeth, there is nothing at all in this record that substantiates such an assumption. Plainly, the Grantors could have written in a forfeiture provision. They chose not to do so. The Grantors could have brought suit to enforce the restraint. They chose not to do so. The Grantors could, in a single sentence, have indicated what would happen should the deed be violated. They chose not to do so. We lack authority to take these steps for them posthumously. The deed contains no penalty for a violation of its provisions. The power of equity must know its limits.

The assumption by the trial court that the Grantors intended to enforce the deed restriction is not supported by the plain language of the deed, nor by any fair interpretation that gives effect to the entire provision, nor by any action by the Grantors, nor by any case law cited. It was error for the trial judge to manufacture an *in terrorem* forfeiture clause that the deed does not contain. The excepted rights terminated at the time the last of the two Grantors died, and then vested in Patricia as the surviving entireties tenant.

Order affirmed in part and reversed in part. Case remanded for entry of an order consistent with this opinion. Jurisdiction relinquished.

PLATT, J., notes dissent.